THE STATE OF ALABAMA VS COLEMAN.

*Questions as to indictments against one, for aiding and abetting in the commission of man-slaughter.*

1. That section of the sixth article of the Constitution of Alabama, in relation to the malicious dismemberment, or killing of a slave, was not intended to create a new offence, punishable by indictment—setting out specially, the terms used in the constitution.

2. So a count in an indictment, charging one *with maliciously depriving a slave of life*, &c. held to be defective.

3. If *one* of several counts, in an indictment, be defective, *it* may be reached by motion to quash, or by demurrer.

4. But, objection to the *whole* indictment, will not prevail, if there be one good count.

5. Where several counts in an indictment, charge offences, to which the law inflicts distinct punishments, it seems the indictment might be bad.

6. But after verdict and judgment, upon an indictment containing good and bad counts, judgment will not be arrested or reversed.

7. One may aid and abet another, in the commission of the offence of man-slaughter, and be punishable accordingly.

8. So, under an indictment charging one with being present, aiding, helping, abetting, comforting, assisting, and maintaining, T. K., in the commission of a murder,—the prisoner may well be convicted of man-slaughter.

On points reserved as novel and difficult, from the Circuit Court of Monroe county.

At the October term, eighteen hundred and thirty-six, of the Circuit Court of Monroe county, an

indictment was found against the prisoner, in the following, words, to wit:

"The State of Alabama, Monroe county, to wit, of the term of the Circuit Court of said county, begun and holden in, and for said county of Monroe, on the second Monday of March, in the year of our Lord, eighteen hundred and thirty-six. The grand jurors, that is to say—good and lawful men of said county, impannelled, sworn and charged to inquire in, and for the body of said county of Monroe, in the State of Alabama, aforesaid, upon their oaths present, that Thomas P. Kennedy, late of the said county of Monroe, laborer, and Daniel Coleman, late of said county of Monroe, laborer, not having the fear of God before their eyes, but being moved and seduced by the instigation of the devil, on the fifth day of October, in the year of our Lord, eighteen hundred and thirty-five, with force and arms, at the said county of Monroe, in and upon one Primus, a negro man slave, belonging to one George Roll, in the peace of God and of the said State of Alabama, then and there being, feloniously, wilfully and of their malice aforethought, did make an assault; and that the said Thomas P. Kennedy, a certain pistol of the value of ten dollars, then and there loaded and charged with gun powder, and twenty leaden bullets, commonly called buckshot, which pistol, he, the said Thomas P. Kennedy, in his right hand, then and there had and held, to, against and upon the said Primus, then and there, feloniously, wilfully, and of his malice aforethought, did shoot and discharge; and that the said Thomas P. Kennedy, with the leaden bullets aforesaid, out of the

5 P.        5

pistol aforesaid, then and there, by force of the gun-
powder, shot and sent forth, as aforesaid, the afore-
said Primus, in and upon the buttocks, of him, the
said Primus, a little above the rectum, of him, the
said Primus, then and there, feloniously, wilfully
and of his malice aforethought, did strike, pen-
etrate and wound, giving to the said Primus, then
and there, with the leaden bullets aforesaid, com-
monly called buck shot, as aforesaid, so as afore-
said, shot, discharged and sent forth out of the pis-
tol aforesaid, by the said Thomas P. Kennedy, in
and upon, the said buttocks, of him, the said Pri-
mus, a little above the rectum, of him, the said Pri-
mus, one mortal wound of the depth of six inches,
and of the breadth of half an inch—of which said
mortal wound, the said Primus, from the said fifth
day of October, in the year of our Lord, eighteen
hundred and thirty-five, until the thirteenth of the
same month of October, in the year last aforesaid,
at the county aforesaid, did languish, and langush-
ing, did live; on which said thirteenth day of Octo-
ber, in the year last aforesaid, the said Primus, at
the county aforesaid, of the mortal wound aforesaid,
died: and that the aforesaid Daniel Coleman, then
and there, feloniously, wilfully and of his malice
aforethought, was present, aiding, helping, abetting
and comforting, assisting and maintaining, the said
Thomas P. Kennedy, the felony and murder afore-
said, in manner and form aforesaid, to do and com-
mit: And so the jurors aforesaid, upon their oaths
aforesaid, do say, that the said Thomas P. Kenne-
dy and Daniel Coleman, the said Primus, then and
there, in manner and form aforesaid, feloniously,

wilfully and of their malice aforethought, did kill and murder, contrary to the form of the statute, in such case made and provided, and against the peace and dignity of the State of Alabama."

"And the jurors aforesaid, do further present, that Thomas P. Kennedy, late of the said county of Monroe, laborer, and Daniel Coleman, late of the said county of Monroe, laborer, on the said thirteenth day of October, in the year of our Lord, eighteen hundred and thirty-five, with force and arms, at Monroe county, aforesaid, did maliciously deprive a certain negro man slave, named Primus, belonging to one George Roll, of life, contrary to the form of the statute, in such case made and provided, and against the peace and dignity of the State of Alabama."

At the October term, eighteen hundred and thirty-six, of the Circuit Court of Monroe county, the prisoner, Daniel Coleman, was put upon his trial, and by a jury of the country, found guilty of manslaughter.

The prisoner's counsel, then moved an arrest of judgment upon the following grounds:

First.—That the indictment was against Thomas P. Kennedy and Daniel Coleman, for the murder of a negro man slave, named Primus; and the indictment charged Kennedy, with the shooting of the said Primus, with a pistol, which he, the said Kennedy, in his right hand had and held; and charged the said Coleman, with being present, aiding and abetting.

Secondly.—The indictment showed that Coleman, if he did any thing, only aided and abetted

Kennedy, and under that charge, he could not be found guilty of man-slaughter; because the very nature of the offence, with which Coleman was charged, implied premeditation, and would make it murder, if it were any offence at all.

Thirdly.—No one could commit man-slaughter, except the one who actually kills; because man-slaughter is an unlawful killing without malice.

Fourth.—The judgment should be arrested, because the finding was uncertain, in not shewing on which count the defendant was found guilty.

Fifth.—The finding was erroneous, if under the second count, because the second count is founded on the statute against malicious killing; and every malicious killing is murder. At any rate, if the jury found the defendant guilty, under the second count, they should have found him guilty of murder, not of man-slaughter.

The motion in arrest of judgment was overruled, and the question reserved as novel and difficult.

*Ellis*, for the prisoner—*Attorney General*, contra.

COLLIER, J.—The prisoner was indicted in the Circuit Court of Monroe County, in an indictment containing two counts.

The first count charges in due form, the prisoner, in conjunction with Thomas P. Kennedy, with making an assault "upon one Primus, (a negro man slave, belonging to one George Roll,) and the said Kennedy, with discharging the contents of a pistol at Primus, by means of which he was wounded, and thereafter died." The count then proceeds

to charge the prisoner with being present, aiding, helping, abetting, comforting, assisting and maintaining the said Kennedy, "the felony and murder aforesaid," in manner and form aforesaid, to do and commit. The count then concludes, that the prisoner and the said Kennedy did kill and murder, in usual form.

The second count merely charges, that the prisoner and, said Kennedy did "maliciously deprive a certain negro man slave, named Primus, belonging to one George Roll, of life;" and concludes, *contra formam statuti,* and against the peace and dignity of the State.

The prisoner, we suppose, (though the record does not shew,) was tried on the *plea of not guilty;* to which the jury responded, "that the said prisoner is guilty of manslaughter, and not guilty of murder, and assess his imprisonment at sixty-eight days, and a fine of one hundred dollars." Judgment following the verdict, the prisoner by his counsel, submitted to the Court the following motion.

"The State       "The defendant in this case
       *vs*       moves to arrest the judgment,
"Daniel Coleman,    upon the following grounds—

1st. The indictment is against Thomas P. Kennedy and Daniel Coleman, for the murder of a negro slave, named Primus; and the indictment charges Kennedy with shooting the said Primus, with a pistol, which the said Kennedy in his right hand had and held; and charges the defendant, Coleman, with being present, aiding and abetting.

2dly. The indictment shews, that Coleman, if he

did any thing, only aided and abetted Kennedy; and, under that charge, he can not be found guilty of manslaughter,—because, the very nature of the offence, with which Coleman is charged, implies premeditation, and would make it murder, if it be any offence at all.

"3dly. No one can commit manslaughter, except the one who actually kills—because manslaughter is an unlawful killing, without malice.

" 4thly. The judgment ought to be arrested, because the finding is uncertain, in not shewing on which count the defendant was found guilty.

5thly. The finding is erroneous, if under the second count, because the second count is founded on the statute against malicious killing, and every malicious killing is murder—at any rate, if the jury found the defendant guilty, under the second count, they ought to have found him guilty of murder, and not of manslaughter."

The Circuit Court overruled the motion in arrest of judgment, and referred the questions of law, thereupon arising, as novel and difficult, to this Court, for its decision.

The legal sufficiency of the first count in the indictment, is not drawn in question by the reference made to this Court; if it were, as at present advised, we should not hesitate to express the opinion, that it conforms to the most approved precedents, and was consequently free from objection.

In respect to the second count, it charges no offence, with technical precision and accuracy—the means employed, the circumstances of their employment, and the particular offence committed,

save only by way of inference, are not shewn; so that according to all rule, this count cannot be sustained. It is supposed to be founded upon the third section of the article of our constitution, in relation to slaves, which is as follows: .

"Any person who shall maliciously dismember, or deprive a slave of life, shall suffer such punishment as would be inflicted, in case the like offence had been committed on a free white person; and on the like proof, except in the case of insurrection of such slave."

This provision of the constitution, was never intended to introduce any new offences against the law. "Maliciously to dismember, or to deprive a slave of life," were as highly penal, before its adoption, as they are now. Its true purpose, was, the security of the slave, by restraining the legislature from the enactment of laws, which would take from him the same protection for his life, which the free white man enjoys. To ascertain how the charge should be made in the indictment, we are not to look to the constitution, but to the books which treat of criminal law. Maliciously to dismember, or deprive of life, are but terms of circumlocution, to designate *mayhem and murder*, and an indictment for the former, should be good for *mayhem*, and of the latter, for *murder*.

The first count being good, and the second bad, the question arises, can the verdict of the jury, which is general, and upon both counts, be sustained. It may be observed, that each count, is a distinct substantive charge. If either count be defective, exception may be taken to it by motion to quash, or

on demurrer, at the discretion of the judge trying the case; but no objection will avail to the whole indictment, if it has any good count.*

If there are several counts in an indictment, and the law inflicts a distinct punishment for the offence charged in each, then the indictment would be bad for misjoinder of offences. It however, seems to be now well settled, that where there is a verdict and judgment on an indictment, with good and bad counts, the judgment shall not be arrested or reversed; but that the finding of the jury, will be upheld by the good counts. For it will be presumed, that the Court, and of consequence the jury, were controlled in their action, by a reference to the good counts.† And Lord *Mansfield*,‡ seems to have considered this to be law in his day, and expressed regret that the principle had not been applied to proceedings in civil suits.

The right to punish manslaughter, under an indictment for murder, has been conceded, upon the principle that the latter includes the former, as a lesser offence of kindred character.

It remains, then, but to inquire whether the prisoner can be found guilty of manslaughter, upon the first count of the indictment.

In this count, he is charged with Kennedy, in making an assault upon *Primus*, and aiding and abetting of him, (Kennedy,) to shoot him, (Primus.) To have participated in the assault, implies an actual and not a constructive presence. To constitute the crime of murder, it is essential to shew, either express or implied malice, on the part of the accused, for if uninfluenced by what the law terms

*5 Whit. 201.

†1. John's 12-320.—
8. Wend. 203.
‡Doug. R. 703.

STATE *VS* COLEMAN.

express malice, or there be no proof of such circum-
stances as to authorise its implication, he must, if
the act be merely illegal, be guilty of manslaugh-
ter.  The man who, without any predetermined
purpose, but under the influence of a momentary
excitement, aids and abets his friend in an affray,
in which the friend kills his adversary, is not guilty
of *murder*, because malice, an essential constitu-
ent of the crime, is wanting; yet, he is not wholly
dispunishable, for aiding and abetting an unlawful
homicide.

Upon authority, it seems unquestionable that
there may be aiders and abettors in manslaughter;
and Russell, (1. vol. 456.) lays it down, that "in or-
der to make an abettor to a manslaughter a princi-
pal in the felony, he must be present, aiding and
abetting the fact committed."   This learned author
is sustained by Hale*.   *1 vol. 438
—439 &
So in Hawkins, (1 vol. 102.) it is said to be clear, 431 et post
that if a master, maliciously intending to kill an-
other, take with him his servants, without acquaint-
ing them with his purpose, and meet and fight his
adversary, and his servants then take part with
him, and kill his adversary, they are guilty of man-
slaughter only; but the master, of murder.   This
distinction is doubtless, founded upon the fact, that
there was a mere participation in the act, without
a felonious participation in the design—a distinction,
founded in principle and  recognized by authority.
*Rex vs Plumer*.†   †Kel. 109.
1 East. P.
In the case at bar, it is alleged that the prisoner C. 257.
was present, aiding &c. and that Kennedy and him-

5P.     6

self, made the assault upon the deceased, which eventuated in his death, at the hands of Kennedy. This allegation, brings the case of the prisoner, not only within the principle, but within the letter of the authority cited.

Hence, we are of opinion, that there is no error in the refusal of the Circuit Court, to arrest its judgment.

It is therefore affirmed.