# Norvell *v.* The State.

*Indictment for Emitting and Circulating Change-bills.*

1. *Joinder of offences in indictment.* — Two misdemeanors, one punishable by fine and imprisonment, and the other by fine only, cannot be joined in one indictment, even in separate counts.

2. *Emitting and circulating change-bills as money ; what constitutes offence.* — To constitute the statutory offence of making, emitting, or circulating change-bills to be used as money (Rev. Code, §§ 3643, 3644), it is immaterial what name was given to the paper, to what extent it was circulated, what considerations of convenience prompted it, or what benefit accrued from it to the accused or any one else ; nor can the criminal intent, necessary to be proved, be avoided by showing that the act was done through indifference, thoughtlessness, or mechanical compliance with the orders of some other person.

FROM the Circuit Court of Montgomery, on change of venue from Elmore.

Tried before the Hon. JAMES Q. SMITH.

The indictment in this case contained two counts; the first charging that the defendant, within twelve months before the finding of the indictment, "signed a certain paper, partly written and partly printed, issued without authority of law, of which the following is a copy "(setting it out), " to answer the purposes of money, or for general circulation ; " and the second, that he "passed and circulated in said State and county paper, partly written and partly printed, issued without authority of

[Norvell v. State.]

law, to answer the purposes of money, of which the following is a copy," &c. The defendant demurred to the indictment, for a misjoinder of offences ; and the court thereupon permitted the prosecuting attorney to enter a *nolle pros.* to the second count, and required the defendant, against his objection, to plead to the first count ; to which ruling and action of the court the defendant reserved an exception, as also to the refusal of the court to quash the first count, on the ground that there was no valid indictment in court.

On the trial, as the bill of exceptions shows, the State offered in evidence one of the papers, or change-bills, which the defendant was charged with emitting, and which was signed by said defendant, with the addition of the word " agent " after the name ; was without date, had the name of W. M. Jordan indorsed on the back, and contained on its face only these words : " Tallassee, 2. Good for two dollars in merchandise." " The evidence showed that this paper, with others of a similar character, varying in amount from ten cents to ten dollars, was used under the following circumstances : The Tallassee Manufacturing Company, at Tallassee, in said county of Elmore, had in its employment about six hundred and fifty operatives, and, besides its manufacturing business, owned a store in Tallassee, which was under the charge of the defendant as superintendent. Previous to any of these papers being signed or used, it was the habit of said company to allow the operatives to purchase goods at the store on a credit, keeping their accounts within the amount to which they would be entitled as wages at the end of the month, when the account would be settled and closed. This system involved a great deal of trouble in keeping the accounts, both from the number of the operatives, and the character of their purchases, being mostly articles of small price ; and frequently, on settling at the end of the month, some of the accounts were disputed. To obviate this, the company determined to adopt the following plan : B. D. Fry was the treasurer of the company ; on application to him by an operative, he would examine the contract under which the operative was working, and having ascertained the amount to which he would be entitled at the end of the month, would give him an order on the defendant, as the agent of the company, at the store, for some amount less than he would be entitled to receive at the end of the month ; the operative took this order to the defendant, who delivered to him the amount called for by it in paper of the character above mentioned ; and the operative then went to another part of the store, where the goods were kept, and made his purchases, paying for the same in said paper ; and if he did not use all the paper at that time, he retained it, to be used in like manner at a future time.

[Norvell *v.* State.]

There was evidence showing that the defendant, and also the clerks in the store, were instructed not to use this paper in any other manner than settling with the operatives. It was in evidence, also, that if the paper presented by the operative was of a larger amount than his purchases, the clerk gave him in change paper of the same description. It was in evidence, also, that the monthly wages of the operatives amounted to about eleven thousand dollars, and that there was used monthly, on an average, in the manner aforesaid, about seven thousand dollars; and when the month was out, on making the settlement with the operatives, after charging them with the paper so received by them, the balance due to them was, in every instance, paid to them in United States currency by the treasurer. There was evidence, also, that the defendant, in some instances, had bought things from country people, and settled for them with this kind of paper; and that it was in circulation generally in the town of Tallassee, where said operatives all lived; and that it had some circulation in the vicinity of Tallassee; and that debts had been paid with them, and goods bought from others than said company's store; and that there were two other small stores in Tallassee, at which this paper was taken in exchange for goods; and that none of said paper was received or used by any of the officers, agents, or clerks of said company, except those employed at the store. This was, in substance, all the evidence in the case.

" During the trial, the defendant asked B. D. Fry, a witness, who had testified as to the mode and objects with which said paper was made, if the Tallassee Manufacturing Company derived any pecuniary profit from the use of said paper; to which question the solicitor objected, and the court sustained the objection; to which decision of the court the defendant excepted. The defendant asked T. M. Barnett, another witness, who was cognizant of the arrangement for making and using said paper, being one of the corporators of said company, under whose direction they were prepared, for what other use was said paper intended than in settling with the operatives; to which question the solicitor objected, and the court sustained the objection; to which ruling the defendant excepted. The defendant asked said Barnett, also, a question tending to prove that he, as one of the owners and managers of said manufacturing company, gave notice to the different clerks and agents of the company at said store, at the time said paper was to be used, not to receive said paper, nor to give it to any persons but the operatives. To this question, also, the solicitor objected, and the court sustained the objection; to which ruling the defendant excepted. The defendant asked one Moorefield, a witness, who lived in Tallassee, and kept a store and ferry there, a question tending

[Norvell v. State.]

to prove that, at the time said paper was first used by said company as aforesaid, said witness and other persons were instructed by the defendant, and by B. H. Micou, the president of said company, not to receive said paper. To this question, also, the solicitor objected, and the court sustained the objection ; to which ruling the defendant excepted.

" The court charged the jury, among other things, that it was a matter of little consequence by what name the parties issuing the paper called it, as parties offending cannot evade the statute by a name or subterfuge ; that the question for the jury to decide was, whether the paper described in the indictment was signed by the defendant to answer the purposes of money, or for general circulation ; that, if it was issued to answer the purposes of money, or for general circulation, the extent of the circulation was not material, as paper issued for general circulation would always be restrained by the responsibility of the parties issuing it."

The defendant excepted to this charge, and requested the following charges, which were in writing : —

" 1. That to convict the defendant, the jury must believe, from the evidence, that the defendant, at the time he signed the said paper, did so with the intention that it should answer the purposes of money, or for general circulation ; and they must be satisfied of that fact, from the evidence, beyond all reasonable doubt.

" 2. That if the defendant, at the time he signed the paper offered in evidence, and other paper testified to, did not sign it with the intention that it should answer the purposes of money, or for general circulation, the fact that it may have been afterwards used by others, or even by the defendant, for either of those purposes, would not be sufficient to convict the defendant as charged in the indictment.

" 3. That the instrument offered in evidence shows on its face that it was not intended to answer the purposes of money, or for general circulation as such.

" 4. That if the jury believed that the intention with which these papers were signed was to simplify the keeping of accounts with the operatives of said company, and not to pay to them as wages, or to be used in any way in which the company would otherwise have been compelled to use money, then they must find that they were not signed to answer the purposes of money, or for general circulation."

The court refused each of these charges, and the defendant excepted to their refusal ; and he now assigns as error the overruling of his motion to quash the indictment, the rulings of the court on questions of evidence, as above stated, the charges given by the court, and the refusal of the charges asked.

[Norvell v. State.]

BLAKEY & FERGUSON and ELMORE & GUNTER, for the defendant.

BEN. GARDNER, Attorney General, for the State.

B. F. SAFFOLD, J. — Two offences are charged in the indictment, which belong to the same family of crimes, and are of the same general nature. But that in the first count is punishable by fine, not exceeding five hundred dollars, and imprisonment in the county jail, for not more than one year; while the other is punished by fine only, not less than twenty, nor more than one hundred dollars. In this State, the law seems to be plain, that indictments for misdemeanors may charge, in several counts, different kindred offences, the punishment of which is the same; but, if the punishment is not the same, the indictment is bad. The State v. Covy, 4 Porter, 186; The State v. Coleman, 5 Porter, 32. That the punishment differs in the degree of severity, is not considered an objection. Johnson v. The State, 29 Ala. 62. Imprisonment and fine are not punishments of the same nature. The court erred in not quashing the indictment, on the defendant's motion to that effect. Mayo v. The State, 30 Ala. 32; 1 Bishop's Crim. Pro. § 206.

Whether the Tallassee Manufacturing Company, which caused the paper to be issued, was benefited by its use, was an immaterial and irrelevant inquiry. The injury resulting to the public is the ground of prohibiting the circulation of change-bills. Fry's testimony on this point was properly rejected.

The other exceptions taken by the defendant to the rulings of the court on questions of evidence, as well as in the matter of charges given and refused, may be considered generally. Section 3643 of the Revised Code forbids any person, private corporation, or association, to make, emit, sign, or countersign, without authority of law, any paper to answer the purposes of money, or for general circulation; or to cause or procure the same to be done. Section 3644 forbids any person to pass or circulate, in this State, any paper issued without authority of law, to answer the purposes of money. In a prosecution under either of these sections, it would be wholly immaterial what appellation was given to the paper as described in them; or to what extent it was circulated, whether among the operatives in a factory, or in the surrounding country; or what considerations of convenience prompted its making, issue, or circulation. Of course, there must be an intention to do the thing forbidden; but this intention is not to be avoided, by mere indifference, refusal to think, or mechanical compliance with the orders of some other person.

The judgment is reversed, and the cause remanded.