60 So.2d 445

**JOLLY v. STATE.**

**4 Div. 178.**

Court of Appeals of Alabama.

Aug. 26, 1952.

---

W. R. Martin, Ozark, for appellant.

534

Si Garrett, Atty. Gen., and M. Roland Nachman, Jr., Asst. Atty. Gen. (Wm. H. Sanders, Montgomery, of counsel), for the State. ·

PRICE, Judge.

The appellant, Gordon Jolly, was tried in the Circuit Court of Dale County, Alabama, under the following indictment:

"The Grand Jury of said County charge that before the finding of this indictment that Gordon Jolly feloniously took and carried away from the person of Melvin Crittenden three five-dollar bills, lawful money or currency of the United States of America, and each of the value of Five Dollars, the personal property of the said Melvin Crittenden;

"Count Two: The grand jury of said county further charge that before the finding of this indictment that Gordon Jolly feloniously took and carried away from the person of Melvin Crittenden three five dollar bills, lawful money or currency of the United States of America, and each of the value of Five Dollars, the personal property of the estate of said Melvin Crittenden, against the peace and dignity of the State of Alabama."

Upon the trial appellant was convicted under count one of the indictment, and sentenced to five years imprisonment in the penitentiary.

The statement of facts set out in the Attorney General's brief states fairly the salient facts adduced upon the trial. We quote from said statement of facts:

"On a Saturday evening in January, 1950, one Melvin Crittenden, also known as Puna Crittenden, a negro, was shot by another negro on a street in the town of Ozark, in Dale County, Alabama. An ambulance was called and Crittenden, seriously wounded but still alive, was placed inside. Appellant, Gordon Jolly, had been in the crowd gathered around the wounded man. When the ambulance arrived he assisted the two helpers in placing the wounded man on a cot in the rear of the vehicle. Defendant then got into this rear section himself and sat on a chair by the side of the wounded man. The two helpers sat on the front seat with the driver, this seat being separated from the rear portion by a glass partition.

"The ambulance proceeded from Ozark to a hospital in Enterprise, in Coffee County, Alabama, a distance of some eighteen miles. The county line,

between Dale and Coffee Counties, is approximately half way between these two towns. Sometime during this trip the injured man died; he was found dead upon arrival at the hospital in Enterprise."

The State contends that during this trip, while the ambulance was still in Dale County, the defendant stole three five dollar bills from the person of Melvin Crittenden, either before or after the said Crittenden died.

The State insists that during the trip Crittenden was unconscious. There was testimony to the effect that the glass partition between the front and rear section of the ambulance may have been rolled down, and the two helpers testified they carried on conversations with defendant during the journey, but they did not turn around and observe him continually during the trip.

Deceased's brother-in-law testified that a few minutes before the killing deceased exhibited to the witness some bills in his wallet, and until the time he was shot he was in the presence and under the observation of the witness, who testified that when Crittenden was shot he still had in his pocket the wallet containing the money.

Other witnesses testified that no one approached Crittenden after he was shot until he was placed in the ambulance, under supervision of police officers, and that no object was lying on the ground near deceased.

Upon the arrival of the ambulance in Enterprise, Crittenden was carried into the hospital and found to be dead. An examination of his person was made immediately by the attendant in charge and an empty wallet was found in one of his pockets. No money was found on the person of deceased. There was testimony by one of the helpers who removed the body from the ambulance that nothing dropped out of deceased's pockets during the removal.

The body was then placed back in the ambulance and the group returned to Ozark.

In the afternoon before the shooting defendant had declared to companions that he had no money, except for fifty cents, and had asked a friend to drive him to a Mr. Bracewell's house to see if he could get some money from him. The friend took him there but Mr. Bracewell was not at home.

Lela Howard testified that approximately thirty minutes after the ambulance returned to Ozark defendant came into her drug store and gave witness two five dollar bills and requested her to keep them for him. With a third five dollar bill the defendant purchased some ice cream from witness and received the change. She stated she had known defendant for a long time, and had kept money for him on several occasions. The State charges these bills were taken from the person of Crittenden.

Defendant denied taking the money. He admitted making the statement in the afternoon that he had only fifty cents. However, he stated that subsequently he had gone to his house and procured some money which he kept there. He testified he had a regular job and was making $20 to $24 a week and had been paid the day before the shooting. He stated he did not go by Mr. Bracewell's house. He insisted the dome light was burning in the ambulance during the ride to Enterprise, and that the glass partition between the driver's seat and the rear part of the ambulance was open and he talked with the three men in the front seat practically all the way to Enterprise.

He testified on direct and redirect examination that he gave Lela Howard the money to keep for him before he made the trip to Enterprise, and on cross examination he testified it was after the return trip. He insisted that he and Lela Howard were good friends and he had asked her to keep money for him on numerous occasions.

There was also evidence that deceased had been in a crap game and was a heavy loser, but the witness testified he left before the game was over and he did not know how much money deceased had.

■ The evidence was entirely circumstantial, but we are of the opinion there was sufficient evidence tending to show defendant's guilt to justify the trial court in submitting that question to the jury, and that it was sufficient to support the judgment of conviction.

Before the trial was entered upon defendant moved the court to require the State to elect as to whether it would proceed under count one or count two of the indictment. The court overruled the motion and the defendant duly excepted.

Appellant urges that the court erred in this ruling, basing his insistence upon the ground that count two charges a misdemeanor, and that counts for felony and misdemeanor may not be joined in the same indictment. We are of the opinion such contention is without merit.

In Mayo v. State, 30 Ala. 32, quoted with approval in Flournoy v. State, 251 Ala. 285, 37 So.2d 223, 224, the court held:

"Where two distinct felonies are charged in different counts, it is not a matter of legal right pertaining to the accused, that the State should be compelled to elect for which one of the offenses it will prosecute; nor will the court compel such election, where the two counts are joined, in good faith, for the purpose of meeting a single offense. It is a practice sanctioned by common custom, and by the law, to charge a felony in different ways, in different counts of the indictment, so as to provide for the different phases which the evidence may present upon the trial; and where such is the bona-fide purpose of the joinder of counts, the court never exercises its power of quashing the indictment, or compelling an election. Baker v. State, 4 Ark. 56; Kane v. People, 8 Wend., N.Y., 203; Roscoe's Criminal Evidence, 231–32; Archb.Cr. Pl. 95, note 1; Barb.Cr.Law, 340; People v. Rynders, 12 Wend., N.Y., 425; State v. Nelson, 8 N.H. 163; State v. Coleman, 5 Port. 32. The principle to be extracted from these authorities is, that the court should always interpose, either by quashing the instrument, or by compelling an election, where an attempt is made, as manifested by either the indictment or the evidence, to convict the accused of two or more offenses growing out of distinct and separate transactions; but should never interpose in either mode, where the joinder is simply designed and calculated to adapt the pleading to the different aspects in which the evidence on the trial may present a single transaction. It is not in any way shown that the purpose or effect of the joinder in this case was to require the accused to answer two distinct offenses; and the court, therefore, properly refused to compel an election by the State." See also Howard v. State, 108 Ala. 571, 18 So. 813; Orr v. State, 107 Ala. 35, 18 So. 142.

So, if count 2 is said to charge a felony, it is manifest that both counts were based on one transaction, and were joined for the purpose of meeting a single offense and to adapt the pleading to the different aspects in which the evidence may be presented on the trial.

In the case of Flournoy v. State, supra, the court observed:

"It is not permissible to join counts for felonies with counts for misdemeanor in the same indictment and such joinder renders the indictment demurrable." Citing Adams v. State, 55 Ala. 143.

If it be conceded, which we do not, that count 2 charges a misdemeanor, under the holding of the above cases, demurrer, and not a motion to compel election, was the appropriate remedy.

In the case of James v. State, 104 Ala. 20, 16 So. 94, it was held that an indictment joining misdemeanor and felony counts is entirely bad on demurrer for misjoinder, and if a trial and conviction are had thereon, in the absence of demurrer, judgment will be arrested on motion, unless the verdict itself ascertains the offense of which the defendant is convicted.

In this case there was no demurrer to the indictment. The court carefully instructed the jury if they were convinced of the defendant's guilt to the requisite degree, to ascertain and show by their verdict on which count of the indictment the verdict was based, and the court imposed sentence in conformity with the verdict.

Counsel also claims in brief that the venue was not proven. It is true there was no testimony as to where the actual taking

occurred, but there was evidence by the State that the defendant was in possession of the alleged stolen money in Dale County.

Section 98, Title 15, Code of 1940, provides:

"When property is stolen in one county and carried into another, the jurisdiction is in either county."

The offense therefore was proved as laid.

Refused charge 3 was fairly and adequately covered by the court's oral charge and charges given at the request of defendant.

Charges 4, 6, 8, and 10 if not otherwise faulty were not hypothesized on "belief 'from the evidence.' " Bush v. State, 211 Ala. 1, 100 So. 312, 313; Wesson v. State, 251 Ala. 33, 36 So.2d 361.

Charge 9 was confusing and misleading.

The jury returned a verdict of guilty as charged in count 1 of the indictment, therefore, defendant was not prejudiced by the refusal of charges 11, 15, 16 which were applicable only to count 2. Sanders v. State, 22 Ala.App. 358, 116 So. 329, certiorari denied 217 Ala. 354, 116 So. 330; Young v. State, 20 Ala.App. 369, 102 So. 366, certiorari denied 212 Ala. 303, 102 So. 369; Treadwell v. State, 168 Ala. 96, 53 So. 290.

The judgment of the trial court is affirmed.

Affirmed.