Paul Stephen BENNETT *v.* STATE of Arkansas

5692                                          477S.W. 2d 497

Opinion delivered March 13, 1972

*Carpenter, Finch & McArthur,* for appellant.

*Ray Thornton,* Atty. Gen., by: *John D. Bridgforth,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. The Appellant was charged by felony information with the crime of the sale of marihuana in violation of Act 590 of 1971 (Ark. Stat.

Ann. §§ 82-2601—38 (Supp. 1971). The trial court, sitting as a jury, found appellant guilty and sentenced him to one year imprisonment in the State Penitentiary and ordered that the appellant serve one-third of this sentence before becoming eligible for parole. For reversal of that judgment the appellant, through court-appointed appellate counsel, contends that the alleged violation was a misdemeanor and, therefore, the court erred in sentencing him to the penitentiary since the Act does not provide for imprisonment in the penitentiary. In other words, the appellant asserts that the alleged violation of this Act constitutes a misdemeanor and not a felony. The pertinent penal provision of this Act (§ 82-2617) reads:

> (1) Any person who violates this subsection with respect to:
> (i) a controlled substance classified in Schedule I or II which is a narcotic drug, is guilty of a crime and upon conviction may be imprisoned for not more than fifteen (15) years or fined not more than $25,000 or both ˙* * *.''

The statutory definition as to what constitutes a felony or a misdemeanor has existed since 1869. Legislation enacted that year provided that:

> "Public offenses are felonies and misdemeanors" Ark. Stat. Ann. § 41-102 (Repl. 1964);

> "A felony is an offense of which the punishment is death or confinement in the penitentiary" § 41-103;

> "All other public offenses are misdemeanors" § 41-104.

These definitions have remained unchanged. The words as to imprisonment or confinement "in the penitentiary" are noticeably and conspicuously missing from the pertinent penal provision of this 1971 Act. Even so, appellee argues that the use of the term "crime" together with the harsh penalty provided in the penal provision in this Act requires that we construe the Act to read that the legislature intended this alleged violation to be a felony.

However, we have held that the words "misdemeanor" and "crime" are synonymous terms even though the latter be "of a deeper and more atrocious dye" and the former a "gentler name". *Hardaway* v. *State,* 237 Ark. 732, 375 S.W. 2d 676 (1964); *Rector* v. *State,* 6 Ark. 187 (1845). Another well established rule of law with respect to statutory construction is that penal provisions are strictly construed and "nothing will be taken as intended which is not clearly expressed and all doubts must be resolved in favor of the defendant." *Shepherd* v. *State,* 246 Ark. 159, 439 S.W. 2d 627 (1969); *Thompson, Commissioner of Revenues* v. *Continental Southern Lines, Inc.,* 222 Ark. 108, 257 S.W. 2d 375 (1953); *State* v. *Arkadelphia Lumber Co.,* 70 Ark. 329, 67 S.W. 1011 (1902); *Casey* v. *State,* 53 Ark. 334, 14 S.W. 90 (1890).

For more than 102 years the definition as to what constitutes a felony or a misdemeanor has existed by statutory law in plain and unambiguous language. Further, these definitions are recognized by our case law. *McIlwain* v. *State,* 226 Ark. 818, 294 S.W. 2d 350 (1956); *Algood* v. *State,* 206 Ark. 699, 177 S.W. 2d 928 (1944); *Burrell* v. *State,* 203 Ark. 1124, 160 S.W. 2d 218 (1942); *Cheaney* v. *State,* 36 Ark. 74 (1880). In *Cheaney* we find this pertinent language:

> "In all our penal legislation, when the word imprisonment only is used, it is understood to mean imprisonment in a county jail or local prison, and and when the legislature has intended imprisonment in the penitentiary, it has been so expressed."

In the case at bar, in view of our statutory definitions and the recognition of their meaning by our decisions, we cannot say that the alleged violation of Act 590 of 1971 constitutes a felony.

Furthermore, we observe that within the past month our legislature in a special session amended Act 590 of 1971, including the penalty provisions before us. The title to this amendatory act (Act 67 of 1972, First Extra-

ordinary Session) provides, *inter alia,* that it is: "An Act *** to clarify penalties***." The emergency clause, Section 9, reads: "It is hereby found and determined by the General Assembly that there is considerable confusion regarding the application and effect of Act 590 of 1971, that the penalties prescribed in Act 590 are in need of clarification; ***." In the amendatory act of 1972 the legislature significantly added the word "felony" and provided for imprisonment "in the state penitentiary." The legislature also increased the penalty for this alleged violation from 15 to 30 years imprisonment.

The appellant also asserts that the court erred in refusing to compel the State to divulge the identity of two informers. The State presented an undercover investigator as a witness who testified that he went to appellee's apartment accompanied by two confidential informers; that after a few minutes conversation, one of the informers told appellant that "we wanted some grass." Thereupon the appellant handed to the undercover agent a bag of marihuana for which he was paid $20 by the agent. Appellant contends that the refusal to require the State's witness to divulge the names of the two individuals who accompanied him was a prejudicial error because: "I (court-appointed trial counsel) can't properly defend my client, and it will keep me from finding any contradictory testimony."

Generally, whether the privilege of nondisclosure of an informer's identity applies depends upon whether the informer was present and participated in the alleged illegal transaction with which the defendant is charged, or whether the informer was "merely" one who supplied only a "lead" to law enforcement officers to assist them in the investigation of a crime. The identity of an informer is required in certain instances, particularly where he was present as a participant. *Roviaro* v. *United States,* 353 U.S. 53 (1957); *United States* v. *Barnett,* 418 F. 2d 309 (6th Cir. 1969); *Sorrentino* v. *United States,* 163 F. 2d 627 (9th Cir. 1947); *Portomene* v. *United States,* 221 F. 2d 582 (5th Cir. 1955); *Gilmore* v. *United States,* 256 F. 2d 565 (5th Cir. 1958); Annot., 76 ALR 2d 287. See, also, § 21 Am. Jur. 2d Criminal Law § 225. The rationale

is that where the informer is a witness to an illegal transaction, his testimony could be relevant to amplify, modify, or contradict the testimony of a government witness and, therefore, essential to a fair determination of the cause.

In the case at bar the appellant denied the accusation and the testimony of the State's witness. Therefore, the testimony of the agent's two companions during the alleged transaction could be relevant and material in contradiction of the State's evidence, as contended by appellant. In such a situation we find this apt language in *Roviaro, supra;* "***The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." In the case at bar it was prejudicial error to overrule appellant's request for the identity of these two witnesses which he sought for the purpose of determining "any contradictory testimony." It follows that the judgment is reversed and the cause remanded.

Reversed and remanded.

HARRIS, C. J., and FOGLEMAN, J., concur.

JOHN A. FOGLEMAN, Justice, concurring. I do not agree that the legislature provided imprisonment up to 15 years and a fine of not more than $25,000 for a misdemeanor. I think the offense charged was a felony.

My reading of *Rector*[1] does not say the same thing to me it apparently does to the majority. To me is says ". . .in common usage, the word 'crime' is made to denote such offenses as are of a deeper or more atrocious dye, while smaller faults, and omissions of less consequence are comprised under the gentler name of misdemeanors only." As I read it, this means that "crime," in common usage, means something different from smaller offenses called misdemeanors.

---

[1]6 Ark. 187.

Furthermore, the word crime is commonly used in our statutes to refer to felonies, so the words crime and misdemeanor cannot be taken to be synonymous. Such statutes include Ark. Stat. Ann. §§ 41-108 (Repl. 1964), providing for the defense of insanity in case of *crime or misdemeanor*, 41-109, making idiots incapable of *crime or misdemeanor*, 41-110, preventing trial of an insane person for *crime or misdemeanor*, 41-114, protecting a married woman from conviction of *crime or misdemeanor* when acting under coercion of her husband, 41-115, relating to drunkenness as an excuse of *crime or misdemeanor*, 41-117, protecting others who commit *crimes or misdemeanors*, 41-119, defining an accessory to a *crime* and 41-120, defining an accessory after the fact to a *crime*. In application of each of these statutes, we have always considered the word "crime" to mean a felony, not a misdemeanor. The difference recognized is best demonstrated by the cases decided before the adoption of Ark. Stat. Ann. § 41-118, abolishing the distinction between principals and accessories before the fact and permitting those charged as principals to be found guilty as accessories after the fact. In those cases, the statutes were applied to felonies but not to misdemeanors. See *Strong* v. *State,* 88 Ark. 240, 114 S.W. 239, 22 L.R.A. (n.s.) 560; *Burrow* v. *City of Hot Springs,* 85 Ark. 396, 108 S.W. 823; *Foster* v. *State,* 45 Ark. 361; *Freel* v. *State,* 21 Ark. 212.

In spite of the statutes, this court followed the common law rule relating to accessories, which it could not well have done if the word "crime" in the above statutes had encompassed misdemeanors. It should be noted that whenever the statutes are to apply to all public offenses, the words "crime or misdemeanor" are utilized.

None of our cases, relating to penal statutes where the place of imprisonment is not stated or where the designated place characterizes the offense, involves a situation in which the lawmakers have declared the prohibited act to be a felony. I submit that the usual and proper construction of the word crime denotes a felony unless the context in which it is used indicates otherwise. It is clear that the General Assembly recognized the dis-

tinction. In Art. II, § 2 (c) of Act 590 of 1971 the unlawful possession of a controlled substance is declared to be a misdemeanor unless the offense is a third or subsequent one. This is a clear indication that the word "crime" in the context of this act means felony.

My construction of the act in this respect is borne out by the comments of the draftsmen of the Uniform Controlled Substances Act, adopted by Act 590 as indicated in the title of the act and its emergency clause. They had this to say about subsection (c):

> Subsection (c) has been drafted specifically to provide for a lesser penalty for simple possession than is provided for the trafficking and illicit manufacturing type offenses under subsections (a) and (b). It is contemplated that subsections (a) and (b) will contain harsh penalties (felony, high misdemeanor, etc.); subsection (c) provides for misdemeanor (or comparable State term) treatment for the simple possession charge.

The amendatory Act of 1972 does not seem to me to have the significance attributed to it by the majority. It seems to me to confirm my construction of the act. The General Assembly recognized that there was confusion regarding the application and effect of Act 590 and that there was a need for "clarification" of the penalties. I do not see how this can be taken to mean that the legislative intent had changed in any respect.

I agree that the judgment in this case must be reversed on account of the withholding of the identity of the "informer," but I would not go so far as to hold that every informer who is a witness to an alleged offense, or who participates in an alleged illegal transaction, must be identified or that the decision is that of the accused in every instance. In *Roviaro* v. *United States,* 353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), cited in the majority opinion, I find the following appropriate language:

> A further limitation on the applicability of the privilege arises from the fundamental requirements

of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure, and, if the Government withholds the information, dismiss the action. * * *

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

In *Roviaro*, a sale of narcotics was involved, but the charge related to receipt, concealment, purchase and facilitation of transportation and concealment of illegally imported heroin. The defendant was faced with a conviction unless he could explain or justify his possession of the drug. So far as the defendant in that case knew, he and the informer called John Doe were alone and unobserved at the crucial time. Consequently, unless he chose to waive his constitutional right and take the stand, John Doe was obviously a material witness, and his right to cross-examine eavesdropping and observing police officers was clearly an inadequate substitute for the testimony of this man who allegedly purchased heroin from him. John Doe was the only person other than the defendant who could amplify or contradict the testimony of the officers. Under these circumstances the court held that the defendant should have the right to at least interview this material witness.

There is enough similarity here to make *Roviaro* controlling. It seems to me, however, that an informer who participates or witnesses a transaction does not, ipso facto, lose status as an informer who has been, and who may subsequently be, of material assistance in law en-

forcement, if his identity is protected. The presence or participation of the informer is, of course, an important factor in deciding whether the privilege may be invoked. If the informer, as in *Roviaro,* was the only participant, then the necessity for disclosure is obvious.

I would say that, in the ordinary case, even where a participant or eyewitness is involved, the burden is on the defendant to show the existence of circumstances justifying the disclosure of the informer's identity, where those circumstances are not, as here, apparent. Generally, the materiality of the disclosure to the defense should appear or be shown. The determination of the necessity of disclosure to insure fundamental fairness in the trial should be a judicial one, not that of the accused.

I sincerely feel that the court has gone further than necessary in ruling on this point, so that I do not consider the language of the opinion binding in future cases.

I am authorized to state that Mr. Chief Justice Harris joins in this opinion.