Charles HOOPER and Robert WESTLIN
*v.* STATE of Arkansas

CR 74-47                                    514 S.W. 2d 394

Opinion delivered October 14, 1974

*John O. Maberry*, for appellants.

*Jim Guy Tucker*, Atty. Gen., by: *O. H. Hargraves*, Dep. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Charles Hooper and Robert Westlin were charged by Information in the Madison County Circuit Court with wilfully and feloniously having in their possession 19 plastic containers of marijuana with the intent to deliver.[1] On trial, appellants were found guilty and their punishment fixed at 10 years imprisonment and a fine of $5,000 each. From the judgment so entered, appellants bring this appeal. For reversal, seven points are relied upon which we proceed to discuss.

It is first asserted that the court erred in compelling appellants to go to trial without a transcript of a certain *habeas corpus* proceeding. On October 4, 1973, the Madison County Circuit Court conducted a hearing on a petition by appellant for a writ of *habeas corpus*, appellants alleging that they were being held illegally. Following the hearing, the petition was denied and the case set for trial. Thereafter, a motion was filed seeking a transcript of the testimony taken at the hearing, particularly that of the sheriff and a member

---

[1] The amount alleged to have been involved was approximately one-half pound.

of the state police. No facts are set out in the motion in support of the request, but in their argument in this court, appellants state that relative to the testimony regarding the search and seizure of the marijuana, "appellants believe" that that testimony "may be in conflict with testimony introduced at the trial." No mention is made of any conflicting evidence and it would appear that appellants just hoped there would be a conflict. The allegations were, of course, insufficient to justify the court in granting the motion, and no prejudice has been shown to have resulted from the court's action. One of the motions filed also contained a request for a continuance based on the refusal to furnish the transcript, which was denied, but this is not argued in the brief before this court. At any rate, the granting of a continuance is within the sound discretion of the trial court. *Jackson v. State*, 245 Ark. 331, 432 S.W. 2d 896. No abuse of that discretion is here shown.

It is next asserted that the court erred in compelling the appellants to be tried by a jury at the request of the prosecuting attorney, appellants having waived their right to a trial by jury. Ark. Stat. Ann. § 43-2108 (Repl. 1964) clearly provides that a defendant may waive trial by jury, except where the sentence of death may be imposed, "provided the prosecuting attorney gives his assent to such waiver." Here, the prosecuting attorney did not give his assent. The contention is thus without merit.

It is contended that the court erred in admitting into evidence the marijuana obtained from appellants' vehicle by an illegal search and seizure. The evidence reflects that Sheriff Ralph Baker of Madison County received information from an informer that appellants would have an amount of marijuana in their black 1964 Ford, which would be in a large black plastic bag, in small packages, and would be located under the driver's seat. This information, acquired from, according to the sheriff, a reliable informant, was received around 8:00 P.M., and apparently the sheriff started out immediately searching for the automobile. This is evidenced by the fact that State Trooper Windell Byrd, who was not on duty at the time, was called by the sheriff and told that he (sheriff) had information that some marijuana was going to be moved shortly on that particular night; according

to Byrd, "He said that he'd like for me to help and I needed to come pretty fast." The trooper stated that he did not have time to put on his uniform and he accordingly answered the call in "civilian" clothes. The transcript does not reveal exactly when appellants' car was first observed, but it is clearly indicated that this occurred not too long after the search began. After catching sight of the automobile in question, the officers got behind the car, pulled up close to appellants and tried to stop them; when this happened, according to the sheriff, "They took off." The officers, traveling in an unmarked car, but equipped with a portable blue light, gave chase, according to the testimony, for about 40 minutes, traveling at speeds of better than 60 miles per hour even on a dirt road. The fugitive car stopped at the Westlin home and the occupants jumped out and started toward the house. The sheriff "hollered" at them and they stopped. The officer officer testified that the driver's side door was completely open and he walked directly to the car, reached under the front seat and pulled out the black bag, the bag being partly exposed. The sheriff said that this bag was located in exactly the place mentioned by the informant, and upon opening same, it was found to contain 18 plastic bags of marijuana. This, says appellants, was an illegal search and seizure. We do not agree. The time element is of prime importance. It is evident from reading the record that the information given the sheriff occurred a short time before appellants were located; of course, the information included the fact that the illegal contraband would be in this automobile, which, of course, could be moved at any time. The circumstances clearly reveal that there was no time to obtain a search warrant; even the accompanying trooper did not have time to change into his uniform. To locate a judge, or magistrate, after office hours is not always easy to accomplish. And, it definitely appears from the record that had such an effort been made, the car would have been gone from the vicinity. As far as the actual act of taking the marijuana from the automobile, the car door was wide open and the black bag partly visible; the wild chase of the automobile certainly was sufficient to justify the sheriff and trooper in believing that the car contained the marijuana about which the informant had spoken. The circumstances bear some similarity to those in *Cox v. State*[2], 254

[2]Certiorari denied by United States Supreme Court. See 414 U.S. 923.

Ark. 1, 491 S.W. 2d 802, where a deputy sheriff received information by telephone that Cox and others had gone into a store, returned to their automobile with a shopping bag and driven off, after which articles of merchandise in the store were discovered missing. The car was described to the deputy sheriff who relayed the information to State Trooper Hale. This officer observed a car answering the description, stopped same, saw sacks on the front floorboard partly open with articles of merchandise and we held that Hale was justified, from the information that he had received, in stopping the automobile, and upon observing the merchandise on the floorboard, in ordering the car driven back to town. We commented:

> "To first have obtained a warrant would mean, of course, that the occupants of the car could have driven on, with full opportunity to dispose of the merchandise in the vehicle. In other words, there was complete justification for an intrusion (considering the detention of the car as an intrusion). These were exigent circumstances requiring instantaneous action to preserve the existence of the evidence sought to be seized."

In *Cox*, there is a comprehensive discussion of pertinent federal cases, including *Coolidge* v. *New Hampshire*, 403 U.S. 443, *Chambers* v. *Maroney*, 399 U.S. 42, and *Carroll* v. *United States*, 267 U.S. 132, and we quoted from *Carroll* as follows:

> "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law."

Certainly, under the circumstances herein, the officers had reasonable cause to believe that the contents of the automobile offended the law, and we hold that the warrantless search was proper and legal.

It is next asserted that the court erred in permitting a bag of marijuana, which had been taken from Westlin during a search at the jail, to be admitted into evidence. We do not

agree and no further authority is needed to establish that the contention is without merit than the recent case of *United States* v. *Robinson*, 414 U.S. 218, wherein Robinson was arrested for a traffic offense, and a search resulted in the seizure of heroin capsules which were admitted into evidence at the trial, such capsules being found in a crumpled cigarette package in the defendant's coat pocket. The district court was reversed by the United States Court of Appeals for the District of Columbia, that court holding that the search was violative of the Fourth Amendment. The United States Supreme Court, however, reversed the Court of Appeals, disagreeing with that tribunal in several respects, but the remarks of the court most pertinent to the issue now before us were as follows:

> "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."

We have already said that the intrusion wherein the black bag was discovered in the car was lawful, and that being true, the search of Westlin at the jail was entirely reasonable.

Appellants contend that they had the constitutional right to be confronted by the "reliable" informer, who had given to the sheriff the information concerning the possession of marijuana by appellants. We do not agree under the circumstances heretofore set out that appellants were entitled to this information. In *Bennett* v. *State*, 252 Ark. 128, 477 S.W. 2d 497, the State presented an undercover investigator as a witness who testified that he went to the defendant's apartment, accompanied by two confidential informers, and that one of the informers told the defendant "We wanted some grass." Thereupon, the defendant handed to the undercover agent a bag of marijuana. This act was denied by the defendant, and the testimony of the undercover agent's com-

panions during the alleged transaction was therefore relevant and material to contradict the State's evidence. We held that the court erred in refusing to compel the prosecution to divulge the identity of these two informers. However, in *West v. State*, 255 Ark. 668, 501 S.W. 2d 771, the same contention was held to be without merit. In so holding, this court said:

"Often, determination whether disclosure is required is ultimately made upon the basis of whether the informant was present or participated in the alleged illegal act with which the defendant is charged or whether the informer merely furnished information concerning criminal activity to law enforcement officers, *Roviaro* v. *United States*, supra. See *Bennett* v. *State*, 252 Ark. 128, 477 S.W. 2d 497. This distinction, which is not always conclusive, is important because the testimony of an informant who is also a witness may well be the sole means of amplification, modification or contradiction of the testimony of prosecution witnesses and is therefore essential to the preparation of an adequate defense. Officer Reeder of the Pulaski County Sheriff's Department testified the informant in this case was not a participant or an eyewitness to the crime with which appellants are charged. The informant's tip caused sheriff's officers to have the victim and her companion view two photographic showups from which they identified appellants. There is no evidence that the informant possessed any knowledge of the crime which was vital to the preparation of appellants' defense. Appellants' failure to show the existence of any facts or circumstances which would require the identity of the person who supplied sheriff's officers with the lead connecting appellants to this crime to be disclosed is fatal to their contention here."

In the instant case, there is no evidence that the informant possessed any knowledge which was vital to the preparation of appellants' defense; no such objection, or allegation, was made, and in fact, the possession of the marijuana was admitted. The point is without merit.

It is next asserted that the trial court erred in not granting a motion for a new trial. The motion sets out several different grounds but the one referred to in the present argu-

ment was the sixth ground which alleges that "The verdict is contrary to the law and the weight of the evidence." In support, it is simply stated:

"The Sheriff's uncorroborated statement that he seized 'about one-half pound of marijuana' is inconclusive, and there is no proof offered by the State that appellants delivered or intended to deliver the marijuana."

It is true that there was no evidence offered by the State that appellants intended to sell or deliver the marijuana and the conviction is based on the statutory presumption. Ark. Stat. Ann. § 82-2617 (d) (Supp. 1973) provides that possession by any person of a quantity of marijuana in excess of one ounce creates a rebuttable presumption that such person possesses same with intent to deliver. The section provides, however, that the presumption may be overcome by submission of evidence sufficient to create a reasonable doubt that the person charged intended to deliver.

Whether there was error in the instruction given by the court with regard to the presumption is not raised by appellant, and is therefore not before us. Actually, the import of appellants' argument is that the act is unconstitutional since it permits the conviction for the offense of intending to deliver the controlled substance without actual evidence that the party possessing same so intended. Both appellants testified that the marijuana was purchased for their own use, i.e., they intended to smoke it themselves, but, of course, the jury was not compelled to believe them. In *Stone* v. *State,* 254 Ark. 1011, the same question was before this court and in a comprehensive opinion we held the provision here in question to be valid and sustained the conviction. That case is a complete answer to the present argument and further discussion is not indicated.

Finally, it is asserted that the verdict of the jury is excessive and indicates passion and prejudice on the part of the jury. We have held that we have no authority to reduce a sentence that is not in excess of statutory limits,[3] and we have

---

[3]In *Simmons* v. *State,* 227 Ark 1109, 305 S.W. 2d 119, Simmons was convicted of first degree murder and his punishment fixed at life imprisonment. There, we reduced the sentence to 21 years but the basis of such reduction was that the evidence did not reveal that the killing occurred with premeditation and deliberation, elements essential to a conviction for first degree murder. We accordingly reduced to the maximum for second degree murder.

consistently, in recent years, followed that rule. In *Osborne* v. *State*, 237 Ark. 5, 371 S.W. 2d 518 (1963), we said:

"Counsel vigorously maintains that the punishment is so severe that it should be reduced by this court. It is true that in a number of the older cases, including one as recent as *Carson* v. *State*, 206 Ark. 80, 173 S.W. 2d 122, we have assumed the power to mitigate the punishment imposed by the trial courts. The right to exercise clemency is, however, vested not in the courts but in the chief executive. Ark. Const., Art. 6, § 18. Our latest cases have uniformly followed the rule, which we think to be sound, that the sentence is to be fixed by the jury rather than by this court. If the testimony supports the conviction for the offense in question and if the sentence is within the limits set by the legislature, we are not at liberty to reduce it even though we may think it to be unduly harsh."

In 1971, the Arkansas General Assembly enacted Act 333 (Ark. Stat. Ann. § 43-2701—2725.2 [Supp. 1973]), Section 12 (§ 2725.2) attempting to vest this court with the authority to reduce sentences that it deemed excessive. In *Abbott* v. *State*, 256 Ark. 558, 508 S.W. 2d 733 (1974), we construed this provision, stating:

"Although we have previously found it unnecessary to pass directly on the constitutionality of this provision insofar as it might be construed to empower this court to reduce a sentence otherwise proper and within statutory limits in cases arising after passage of the act, it should be clear that legislative action cannot override constitutional provisions. We strongly intimated that this act was ineffective to overrule the holding in *Osborne* v. *State, supra,* in *Hurst* v. *State, supra,* and cited in the case of *People* v. *Odle,* 37 Cal. 2d 52, 230 P. 2d 345 (1951). In that case a similar statute was construed by the California court to do no more than authorize it to reduce the punishment, in lieu of granting a new trial, when the only error found on appellate review related to the punishment imposed and was prejudicial. It specifically held that the statute granted no power to modify a sentence where there was no error in the proceeding. To construe the statute otherwise, said the court, speaking

through Justice Traynor, would give the reviewing court clemency powers similar to those vested in the Governor by the California Constitution. That court clearly recognized that any construction of the statute extending the power of the appellate court any further would raise serious constitutional questions relating to the separation of powers. We think the construction given to the California statute by that state's Supreme Court was correct and that the same construction should be given our statute. When given that construction, it is clearly constitutional. If construed to give this court the power to reduce a sentence in the absence of error pertaining to the sentence, the statute would be unconstitutional for violation of Art. 6, Sec. 18 and Art. 4, Sec. 2 of the Arkansas Constitution, and upon the authority of *Osborne v. State*, supra."

Finding no reversible error, the judgment is affirmed.

It is so ordered.

BYRD, J., concurs.