Johnny HARRIS *v.* STATE of Arkansas

CR 77-173                              558 S.W. 2d 143

Opinion delivered December 5, 1977
(In Banc)

*Solloway, Cronkhite & Jackson,* by: *Lanny K. Solloway,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joyce Williams Warren,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. Upon trial by jury the appellant was found guilty of capital murder and was sentenc-

ed to life imprisonment without parole. For reversal he argues that the trial court should have sustained his motion to suppress evidence — two pistols — obtained under separate search warrants and that the State's proof, apart from the testimony of accomplices, is insufficient to support the verdict. We affirm the judgment.

On August 20, 1976, according to the State's proof, two men entered the home of Beulah Collins, robbed her of a money belt containing $200, left her tied up, and killed Joe Vinson, who was renting a room in the house. Someone, presumably the robbers, set fire to the house the next day, but Mrs. Collins was rescued by neighbors. Mrs. Collins testified that the robbers took a .22-caliber pistol and a .32-caliber pistol.

On August 24 the appellant Harris was arrested on a bad-check charge. Soon after that arrest the arresting officer saw a pistol on the floor of the car that Harris was driving. The officer obtained a search warrant and seized the pistol, which was shown by its serial number to have been the .22 that was taken from Mrs. Collins. The search of the vehicle took place at about 8:30 p.m. On the basis of that evidence the officers at once obtained a second warrant and searched Harris's apartment, finding on the person of his brother-in-law, Curtis Fryer, a .32-caliber pistol which was adequately shown to be the other gun that was taken.

The validity of the first seizure presents no real question, because the pistol might have been taken by the arresting officer under the plain-view doctrine, without a warrant. With respect to the second seizure, however, both the affidavit for the warrant and the warrant itself are challenged.

We find the affidavit sufficient, under the principles laid down in *Aguilar v. Texas*, 378 U.S. 108 (1964), and later cases. The affidavit contains a statement by the affiant that an informant had, before Harris's arrest on August 27, told officers that Harris was a participant in the robbery-murder that occurred on August 20. The affiant went on to say that the informant's reliability was shown by the fact that the .22-caliber revolver, serial number T523073, that was taken in the robbery was found in the vehicle that Harris was

operating. The same informant reported that a sawed-off shotgun used in the robbery-murder was at Harris's home. An immediate search was called for, because evidence of the robbery-murder could be readily disposed of.

On the basis of the affidavit the magistrate was justified in finding that the informant (who testified at the trial) was reliable, because her statement about Harris's participation in the earlier crimes was shown by the seizure of the .22 to have been accurate. Hence the informant's further statement that a sawed-off shotgun used in the crimes was at Harris's home justified the issuance of a warrant for the search of that home.

As to the warrant itself, it did not recite, as required by the Rules of Criminal Procedure, Rule 13.2 (1976), that the magistrate found reasonable cause for the issuance of the warrant, that it be executed only between 6:00 a.m. and 8:00 p.m., that it be executed within 60 days, or that the return be made within 5 days after execution. It is also argued that no exigent circumstances justifying a nighttime search were shown in the affidavit.

The Rules themselves recognize that all the recitations just mentioned are not essential to the validity of a warrant. Rule 16.2 provides that a motion to suppress shall be granted only if the court finds that a violation is substantial or contrary to the federal or state constitution. The Fourth Amendment and Article 2, Section 15, of the Constitution of 1874 stress the really vital matters: That the warrant be issued upon probable cause, supported by oath or affirmation, and that it particularly describe the place to be searched and the person or thing to be seized. Those essential requirements were met in this instance.

The question, then, is whether the absence of the several recitations was a substantial violation of Harris's rights. We do not think so. Inasmuch as the warrant was executed and the return made within a few hours after the warrant was issued, the omission of the 60-day and 5-day directives could not have prejudiced Harris. As to the need for a nighttime search, the officer's sworn statement that evidence of the crimes might be disposed of was certainly a basis for prompt action. We may note, parenthetically, that when the officers

entered Harris's apartment with the search warrant, Fryer ran out of the back door with the .32-caliber pistol that was introduced at the trial. Finally, the magistrate's actual issuance of the search warrant established his finding of reasonable cause even more positively than the insertion of a conclusory finding to that effect would have. See *Baxter v. State,* 262 Ark. 303, 556 S.W. 2d 428 (1977), where we upheld the warrant even though the magistrate's finding was not that there was reasonable cause for the issuance of the warrant but merely that there was reasonable ground for suspicion that the described property was concealed in Baxter's house. Here we find no substantial violation of Harris's rights.

There remains to be considered the sufficiency of the State's proof, apart from the testimony of accomplices. We find the proof sufficient, for either of two reasons. First, the necessity for corroboration of accomplices' testimony was not mentioned in any way in the trial court and was therefore waived. *Trotter v. State,* 215 Ark. 121, 219 S.W. 2d 636 (1949); *Morris v. State,* 197 Ark. 778, 126 S.W. 2d 93 (1939).

Second, there was in fact sufficient corroboration of the accomplices' testimony. The murder itself was proved by wholly independent evidence. The finding of the .22-caliber pistol in Harris's car established his connection with the crime. In addition, Fryer, who cannot be said to have been an accomplice as a matter of law, testified to Harris's having been away from his home, with the accomplices, when they said he was, and to Harris's having stated two days before the crime that he was going to rob somebody and tie them up. That, in substance, is just what happened.

Affirmed.

BYRD, J., not participating.