R. M. JAMES, Jr. *v.* STATE of Arkansas

CR 83-88                                658 S.W.2d 382

Supreme Court of Arkansas
Opinion delivered October 10, 1983
[Rehearing denied November 7, 1983.*]

*PURTLE, J., would grant rehearing.

*Mary Beth Sudduth* and *William M. Clark,* by: *Mary Beth Sudduth,* for appellant.

*Steve Clark,* Atty. Gen., by: *Victra L. Fewell,* Asst. Atty. Gen., for appellee.

STEELE HAYS, Justice. Appellant R. M. James, Jr. was charged with possession, delivery and manufacture of a controlled substance and attempted capital felony murder. He was convicted of possession of a controlled substance, delivery of a controlled substance and aggravated assault. He brings this appeal asking reversal on several points.

A confidential informant supplied information that was the basis for a search warrant that produced evidence used by the state. The informant was present when James

was arrested and witnessed the incidents that gave rise to the charges for delivery of a controlled substance and attempted capital felony murder, the latter charge based on evidence that when the police officers surrounded James he drew a pistol and grabbed one of the officers. James was subdued before any shots were fired.

James moved for disclosure of the informant's identity and the motion was denied. Citing *Bennett* v. *State*, 252 Ark. 128, 477 S.W.2d 497 (1972), he argues that when an informant is also a witness or participant to the criminal incident, the identity of the informant should be disclosed. Appellant is correct in his statement of the general rule as stated in *Bennett,* however, this is not a per se rule, but dependent upon the circumstances of each case. This is made clear in *Roviaro* v. *United States,* 353 U.S. 53 (1957) cited by *Bennett. Roviaro* emphasizes the need for "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case . . ." *Roviaro* at 62.

In *Bennett* we pointed out that the defendant had denied the accusations of the state, and the testimony of the informants could be relevant in contradiction of the state's evidence. In the case at bar, we find distinguishing facts. When James moved for disclosure of the informant, his request was supported only by a statement that he was interested in getting the informant's version of the story. There was no specific contention that it would be helpful to his defense, as in *Bennett.* See also *State* v. *Lechner,* 262 Ark. 401, 557 S.W.2d 195 (1977). Additionally, the prosecution stated it was required to divulge any exculpatory evidence and there was none that the informant could supply. Of significance were the representations of the prosecution that the informant had been threatened and his residence destroyed by fire. There were no such countervailing considerations in *Bennett.* Under *Roviaro,* and our own cases, we cannot say the denial of disclosure in this case was error.

James next sees error in the trial court's refusal to suppress evidence which was taken at night allegedly in

violation of A.R.Cr.P. Rule 13.2 (c). The rule requires searches to be made between 6:00 a.m. and 8:00 p.m. unless within the stated exceptions. The search of the White Oak Gun Club, managed by James, and of his adjacent residence, began at 7:10 p.m. when an officer displayed the warrant to workers at the Gun Club and took control of the building. Before continuing the search, however, one of the officers returned to the judge who had issued the warrant to have the affidavit amended to include a controlled buy recently made from James. The warrant was reissued at 9:12 p.m. The officer returned to the Gun Club to conduct the search and the search was concluded by 10:40 p.m. James does not allege nor does it appear that the search warrant was deficient before it was amended. The officer testified he believed the original warrant was sufficient but the amendment would add more credibility to the warrant.

Although we found a related nighttime search unreasonable in *State* v. *Broadway*, 269 Ark. 215, 599 S.W.2d 721 (1980), we find that case distinguishable. The search here was actually commenced at a permissible time, 7:10 p.m., with an apparently sufficient warrant. Only an abundance of caution by the officer caused the delay. In *Broadway*, a warrant was issued in the early evening and the search did not begin until 9:15 p.m. A.R.Cr.P. Rule 16.2 (e) requires suppression of the evidence only if the violation is substantial. In *Harris* v. *State*, 264 Ark. 391, 572 S.W.2d 389 (1978), we found accumulation of deficiencies to amount to a violation of A.R.Cr.P. Rule 16.2 (e) and said, "The state has not demonstrated a reasonably good faith effort was made to comply with the rules." All other aspects of the warrant in this case are proper and the officers here additionally demonstrated their good faith by their efforts to make certain that the warrant was properly substantiated. Under the circumstances presented here we cannot say the violation was substantial.

James also submits the search warrant was deficient because the supporting affidavit does not meet the two-prong test of *Aguilar* v. *Texas*, 378 U.S. 108 (1964).[1] Under

[1]We note that in *Thompson* v. *State*, 280 Ark. 265, 658 S.W.2d 350 (1983), we said in the future we will apply the totality of the circumstances

*Aguilar* the warrant must state: 1) underlying circumstances from which the informant concluded the items to be seized would be there; 2) underlying circumstances showing the informant to be reliable. The appellant challenges only the second prong of *Aguilar,* reliability of the informant.

There is no fixed formula to make this determination and we have considered several measures by which the informant's reliability may be established. See *Baxter* v. *State,* 262 Ark. 303, 556 S.W.2d 428 (1977); *State* v. *Lechner,* 262 Ark. 401, 557 S.W.2d 195 (1977). Criteria pertinent to this case are: information within the knowledge of affiant furnishing corroboration of the informant's disclosures, *Baxter* at 309, and recent and personal observations by informant of criminal activity. *Lechner* at 406.

In the warrant in question, the affiant stated that: the informant had established his reliability; all information provided by the informant had been determined by the affiant to have a basis and foundation in fact; at the request of affiant the informant had obtained marijuana samples from James which the informant said were taken from James' property; the informant related that there were large quantities of marijuana on the property; the informant had told affiant that he was employed as a laborer on James' premises and the affiant had seen the informant there on at least one occasion; an undercover agent related to affiant that he, accompanied by informant, had made a recent buy of what was understood to be marijuana from James. The foregoing is not just a bare statement by the affiant of the informant's reliability, but a statement of corroboration and support of the informant's disclosures. We find from the above statements sufficient basis for finding the informant reliable.

In appellant's fourth argument he claims the court committed error by commenting on a factual matter in the presence of the jury. When reference to a confidential informant was made by one of the attorneys, the court

test as recently enunciated in *Illinois* v. *Gates,* ___ U.S. ___, 103 S.Ct. 2317 (1983).

admonished the jury not to rely on that information or to let it influence their decision in any way and that the identity of the informant had no probative value. James argues that these remarks amounted to comments on matters of fact, contrary to Art. 7 § 23 of the Arkansas Constitution, by invading the province of the jury, the sole judge of credibility of witnesses.

We find no error in the court's comments. The remarks went only to the relevancy of the evidence, which is a determination to be made by the court. Unif. R. Evid. 104. The credibility of the witness was never at issue and was not ruled upon by the court.

Appellant next contends that the trial court erred by instructing the jury that aggravated assault was a lesser included offense to the charge of criminal attempt to commit capital murder. We find no error.

Ark. Stat. Ann. § 41-105 (2) (c) states:

A defendant may be convicted of one offense included in another offense with which he is charged. An offense is so included if:
(a) *
(b) *
(c) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpable mental state suffices to establish its commission.

The commentary to the statute states that this test for a lesser included offense provides for lesser offenses within the same generic class, so, for example, second degree battery is an included offense of first degree battery and manslaughter is an included offense of murder.

Before our present criminal code was adopted in 1976, attempt crimes were denominated as assault crimes, which the Commentary to § 41-105 points out. We traditionally found degrees of assaults of a given crime within the same

generic class, *Wills* v. *State,* 193 Ark. 182, 98 S.W.2d 72 (1936), and a lower degree as an included offense of the higher. Simple assault was an included offense of assault with intent to rape. *Wills* v. *State, supra; Fike* v. *State,* 255 Ark. 956, 504 S.W.2d 363 (1974). Aggravated assault was an included offense of assault with intent to kill. *Sharpensteen* v. *State,* 220 Ark. 839, 250 S.W.2d 334 (1952); *Browning* v. *State,* 233 Ark. 607, 346 S.W.2d 210 (1961).

The new code includes a general attempt statute, § 41-701, and eliminates many of the older assault statutes, e.g. assault with intent to kill, assault with intent to rape, assault with intent to rob, etc. See Ark. Stat. Ann. § 41-701, Commentary. The code now contains only four assault statutes, Ark. Stat. Ann. § 41-1604 — § 41-1607, and they are graded from aggravated assault down through assault in the third degree. Although the wording of these statutes differs somewhat from the statutes they replaced, [see § 41-1601, Commentary], there is nothing in the language that would dictate a change from our former approach of finding a lower degree of assault as a lesser included offense of an attempt crime of an assaultive nature. Additionally, the Commentary to Ark. Stat. Ann. § 41-1601 indicates that assault retains the same character under the new criminal code as it had under previous law and changes that *were* made have no bearing on lesser included offenses nor were the changes meant to alter any prior law in that area.[2] See also § 41-701, Commentary. Under the new code then, the lower degrees of an attempt crime are found within the assault statutes and are within the same generic class as attempt crimes, as in this case, where aggravated assault was held to be a lesser included offense of attempted capital murder. The trial court ruling in this case was correct under prior law and under our present law, which law has not been substantively changed by the criminal code.

The appellant next argues without authority that he was denied his fifth amendment rights under the United

---

[1]That commentary does suggest that under the new code, acts constituting an attempt to commit a crime might contain *more* elements than are necessary to prove assault, but that does not preclude finding in such a case that an assault is a lesser included offense of the attempt.

States Constitution, that he not be compelled in any criminal case to be a witness against himself. He was charged with several counts of possession, delivery and manufacture of a controlled substance and one count of criminal attempt to commit capital murder. He made a motion to limit cross-examination by the state to the offenses for which he would choose to testify. The motion was denied and he chose not to testify at all. But we said in *Williams* v. *State,* 258 Ark. 207, 523 S.W.2d 377 (1975): "Where an accused takes the stand in his own behalf he subjects himself to the same rules of cross-examination as any other witness." Although there appears to be some criticism of this approach to the problem, this is also the current approach and general rule in other jurisdictions.[3]

In appellant's final point he argues that under Art. 2 § 10 of the Arkansas Constitution and Ark. Stat. Ann. § 43-2133, the trial of a defendant should be heard in the county in which the crime was committed and the state in its case failed to prove this jurisdictional fact, citing *Ward* v. *State,* 77 Ark. 19, 90 S.W. 619 (1905). Appellant's argument is readily answered by subsequent developments in the law. Ark. Stat. Ann. § 43-1426 provides for presumption of venue unless the evidence affirmatively shows otherwise. See *Johnson* v. *State,* 254 Ark. 703, 495 S.W.2d 845 (1973); *Hill* v. *State,* 253 Ark. 512, 487 S.W.2d 624 (1972).

Affirmed.

ADKISSON, C.J., not participating.

HICKMAN, J., concurs.

PURTLE, J., dissents.

DARRELL HICKMAN, Justice, concurring. I agree with the result because the identity of the informant was a false issue, as the trial judge stated. The defendant knew the informant and had for some time. While the state's action in refusing to cooperate was senseless in my judgment and perhaps not in good faith, there was no prejudicial error.

---

[3]See McCormick on Evidence (2d ed. 1972 § 132).

JOHN I. PURTLE, Justice, dissenting. I do not agree with the majority statement that the confidential informant was only a witness to the transaction which gave rise to the charges upon which appellant was convicted. He was the person who set up the deal and was an active participant in the transaction. Therefore, he was an indispensable witness to appellant's defense on the delivery charge. Appellant timely requested the identity of the informant but the state steadfastly refused to reveal his identity in spite of the requirement that it do so. *Bennett* v. *State,* 252 Ark. 128, 477 S.W.2d 497 (1972); A.R.Cr.P., Rules 17 and 19. Such a practice of refusing to disclose information vital to an accused's defense will eventually lead to trial by affidavit without allowing the accused the right to confront his accusers.

It is not enough for me to rely upon unfounded statements that the appellant knew the identity of the informant. The most that may be said is that appellant thought he could recognize the face of the character. He did not know his name or address. Both defense attorneys stated in court that they did not know his identity. Only the state knew the identity of the confidential informant and how to contact him. Common sense tells me the appellant would have revealed the identity of his accuser to his attorneys.

The trial court commented on the evidence when the court, *sua sponte,* stated:

> Ladies and gentlemen of the jury, I want to give you this admonition before we proceed on with the trial in this matter. The question of the identity of a confidential informant has been mentioned or brought up two or three times during the trial of this thing, and the court feels that the identity of the confidential informant has no probative value. I have admonished the attorneys not to go into that any more in the trial of this matter, to confine themselves to other pertinent, relevant matters, and I'm going to admonish you in reaching your verdict in this case not to take into consideration anything concerning that person that acted as a confidential informant and to not rely upon,

use or allow to influence your decision in any manner the fact that a confidential informant was at one time a part of this particular process and procedure.

How can it be said that an eye witness to a criminal act is of no probative value? From voir dire to closing arguments the jury was reminded there was a party to this transaction which they had not been able to hear. It is my opinion that the court in effect told the jury that they were not to consider the fact that the state did not produce a known witness to the transaction. It is proper for a jury to consider the absence of a known witness while deliberating on the case.

As to the search warrant, there were no exigent circumstances for allowing a nighttime search of appellant's home, which was connected to the club building. The majority states the search actually commenced at 7:10 p.m. However, I read the record to reveal the officer with the warrant went to appellant's club and residence but decided to go back and amend the affidavit and warrant in order to show a buy made earlier the same day. The decision not to use the first warrant was to lend credibility to the informant because the amended warrant would reveal the actual delivery of a controlled substance. Appellant was already under arrest and in custody before the 7:10 p.m. appearance. At that time the officers secured the premises. There was no danger of appellant removing or destroying evidence, unless he escaped from jail and I see no evidence this was probable. The warrant states that the evidence was secured at 10:40 p.m. Neither the affidavit nor the warrant contained even the allegation that exigent circumstances existed which might support a night search. The only reliability of the informant was that he produced two samples of marijuana which he claimed to have been obtained from the appellant. He had never before been proven to be reliable. He thus proved his reliability by his own unsworn testimony.

Our rules relating to searches are not mere technicalities and hinderances for those enforcing the laws; they exist to assure people that when an officer appears with a search warrant they can reasonably expect that it is issued with probable cause and in accordance with our laws and the

370

constitution. *Harris* v. *State,* 262 Ark. 506, 558 S.W.2d 143 (1977). Our criminal laws do not exist for the benefit of criminals. They exist for the benefit of the people. Our constitutions mandate certain rights, even to those accused of crimes, and our courts and law enforcement officials are bound to protect such rights.

In my opinion the majority concludes from the results of the search that the informant was reliable and nighttime search was warranted. These criteria are to be decided prior to the issuance of a warrant. Unless they exist at that time the warrant should not issue. Here, there was ample evidence to convict appellant without the aid of this invalid search warrant. Even if one were needed it would have been just as successful the next day. In fact, another one *was* issued the next day. I would suppress the items received as a result of the nighttime search.

The direction taken by the majority in this case chills me to the bone. It is beyond my comprehension how the law enforcement officers, the prosecutor and the trial court could all so clearly bulldoze through appellant's constitutional rights and be upheld on appeal. The very sad part is that it was all so unnecessary. Appellant stood a very good chance of being convicted without any of the disputed evidence being admitted. I cannot in good conscience vote with the majority to deny fundamental constitutional rights to the appellant, the denial of which may one day return to haunt us all. I must, therefore, dissent.