STATE of Arkansas *v.* Jesse C. MARTINEZ, Jr. and Nadine C. Martinez

CR 91-75                                           811 S.W.2d 319

Supreme Court of Arkansas
Opinion delivered July 15, 1991

354

*Winston Bryant*, Att'y Gen., by: *Jeff Vining*, Asst. Att'y Gen., for appellant.

*Jeffrey E. Levin* and *Ronald E. Bumpass*, for appellees.

DONALD L. CORBIN, Justice. The state brings this interlocutory appeal from an order of the Johnson Circuit Court granting appellees' pretrial motion to suppress evidence. Ark. R. Crim. P. 36.10. The sole issue presented in this appeal is whether the trial court erred in ruling the evidence seized be suppressed due to an invalid nighttime search warrant. We affirm.

In reviewing a trial court's decision to grant a defendant's motion to suppress evidence, we make an independent determination based on the totality of the circumstances and reverse the trial court's decision only if it is clearly against the preponderance of the evidence. *State* v. *Blevins*, 304 Ark. 388, 802 S.W.2d 465 (1991).

Our review of the evidence reveals that, on four different occasions during the month prior to the July 27, 1990 arrest of both appellees, Officer Hanes of the Fifth Judicial Drug Task Force purchased marijuana from appellee Jesse Martinez at the Martinez property, which consists of both the Martinez residence and a Martinez-owned business entitled Marty's Gun Shop. On July 26, 1990, Jesse Martinez contacted Officer Hanes regarding the purchase of a quarter pound of marijuana. At this point, Officer Hanes initiated steps to obtain a search warrant. He planned to execute the above-referenced purchase and then search the Martinez property. On July 27, 1990, Officer Hanes met with Chief Deputy Dorney of the Johnson County Sheriff's

Office and Judge Len Bradley to obtain the search warrant. Officer Hanes was sworn and signed the prepared affidavit. The search warrant was then issued at approximately 6:45 p.m. Because Ark. R. Crim. P. 13.1(b) requires the application for a search warrant be supported by one or more affidavits or recorded testimony, we do not consider any unrecorded oral testimony that may or may not have been given. Thus, we only consider the information contained in the affidavit.

The affidavit was dated July 27, 1990, and recited that arrangements had been made to purchase a controlled substance from Jesse Martinez on that day. The affidavit also stated that it was believed Martinez stored the controlled substance at his residence and that the proposed sale was expected to occur there.

The state argues the search warrant issued in this case contained the appropriate language that the warrant was to be executed "at any time of the day or night" and therefore, the trial court erred in granting the motion to suppress. With this argument we cannot agree.

It is well-settled that an affidavit must set out facts showing reasonable cause to believe that circumstances exist which justify a nighttime search. *State* v. *Broadway*, 269 Ark. 215, 599 S.W.2d 721 (1980); *Harris* v. *State*, 262 Ark. 506, 558 S.W.2d 143 (1977). Ark. R. Crim. P. 13.2(c) provides that:

> (c)   Except as hereafter provided, the search warrant shall provide that it be executed between the hours of six a.m. and eight p.m., and within a reasonable time, not to exceed sixty (60) days. Upon a finding by the issuing judicial officer of reasonable cause to believe that:
>
> (i)   the place to be searched is difficult of speedy access; or
>
> (ii)   the objects to be seized are in danger of imminent removal; or
>
> (iii)   the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy;
>
> the issuing judicial officer may, by appropriate provision in the warrant, authorize its execution at any time, day or

night, and within a reasonable time not to exceed sixty (60) days from the date of issuance.

The affidavit in this case does not set out facts showing reasonable cause for Judge Bradley to have found that any of the three circumstances quoted above existed. The affidavit merely provides that four previous sales of marijuana had been made by Jesse Martinez to Officer Hanes, that controlled substances were believed to be stored at the Martinez residence, and that another purchase was scheduled to occur at the residence that day. The affidavit is silent with respect to anything regarding reasonable cause to believe the marijuana would be destroyed or removed before the next morning. Thus, we hold it was error for the nighttime search warrant to have been issued.

Our holding is consistent with *Hall* v. *State*, 302 Ark. 341, 789 S.W.2d 456 (1990), and *State* v. *Broadway*, *supra*. Both *Hall* and *Broadway* have facts similar to the facts in the present case. In *Hall*, *supra*, we held that an affidavit reciting simply that illegal drugs were at appellant's residence and that a confidential informant had purchased marijuana there within the last seventy-two hours did not state facts sufficient to support the issuance of a nighttime search warrant. The *Hall* case is controlling of the present case in all respects.

Although we hold the issuance of this search warrant was in violation of Ark. R. Crim. P. 13.2(c), a motion to suppress will not be granted unless the violation is "substantial." Ark. R. Crim. P. 16.2(e). "The nighttime intrusion into a private home is the violation of an important interest, and from the record before us there is nothing to indicate that the evidence would not still have been there the next morning." *Hall*, 302 Ark. at 344, 789 S.W.2d at 458. Consistent with *Hall*, we hold the intrusion into appellees' home, which began at approximately 9:00 p.m. and continued through 4:00 p.m. the next day, was a substantial violation of our rules.

The state urges us to apply the good faith exception to the warrant requirements which was first enunciated in *United States* v. *Leon*, 468 U.S. 897 (1984). We have stated that we would apply this exception to violations of our state laws given the appropriate case. *Hall*, *supra*. However, as was also determined in *Hall*, this is not the appropriate case. *See Hall*, *supra*, 302 Ark.

at 344, 789 S.W.2d at 458-59. In the case at bar, Chief Deputy Dorney testified he was somewhat familiar with our rules of criminal procedure regarding nighttime searches. There can be no doubt then that he knew the search which began at approximately 9:00 p.m. was conducted in violation of our rules. The search violated our rules in that it was conducted, almost one hour after the 8:00 p.m. time constraint, pursuant to an affidavit that did not specify any of the three conditions for issuing a nighttime warrant. Because the executing officers did indeed have knowledge of our rules, we need not address the issue of whether the issuing judicial officer remained neutral and detached and refrained from acting as a rubberstamp for the law enforcement officers. *Id.* Thus, we decline to apply the good faith exception to this violation of our rules of criminal procedure.

In summary, it was error to issue the nighttime search warrant. The good faith exception is not applicable to this case. Based on our review of the evidence, we cannot say the trial judge's decision to grant the motion to suppress was against the preponderance of the evidence. *Hall, supra,* is a case with strikingly similar facts to this case and we are bound by that decision. Accordingly, the trial court's suppression order is affirmed.

HOLT, C.J., and HAYS, J., dissent.

STEELE HAYS, Justice, dissenting. It is, I believe, a mistake to decide this case from the standpoint of whether the search warrant meets the requirements of a nighttime search. The correct approach, I suggest, is to determine whether the manner and means by which the search warrant was executed constitutes a substantial violation of our rules governing search and seizure of evidence. Ark. R. Crim. P. 16.2. It is, after all, only *unreasonable* searches that are offensive to the Fourth Amendment. *Harris* v. *United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). In determining whether the violation was substantial we are obliged to consider all the circumstances, including the extent of deviation from lawful conduct by the officers, the extent to which the violation was willful, the importance of the particular interest violated, the extent to which privacy was invaded. Rule 16.2. When the circumstances of this case are examined, there is no basis for a conclusion that the officers acted improperly in any

manner or that the search was in any sense unreasonable.

In the late morning of July 27, 1990, the day the warrant was issued, appellee Jesse Martinez called Officer Hanes, acting as an undercover agent, to say "I've got plenty of what you want" (referring to marijuana). Hanes asked if Martinez could handle a quarter pound and Martinez said "Yeah, that would be easy." Hanes began the steps to secure a search warrant, which was issued at 6:45 p.m., well within the 6:00 a.m. to 8:00 p.m. time frame of Ark. R. Crim. P. 13.2(c). It is evident the officers assumed the warrant would be executed during daytime hours, but when they called Martinez to arrange to come to his house, ostensibly to make the purchase, he put them off on the grounds that he had company. Martinez arranged to meet them near the Mulberry River Bridge on Highway 103, some distance from his home. By the time Martinez arrived it was 8:10 p.m. and so it was 8:48 before the officers could make the arrest and drive to Martinez's house to begin the search. It is clear the delay was attributable not to improper conduct by the officers, but to arrangements directed by the appellee and which the officers were powerless to counter-mand without arousing his suspicions.

Thus, the issue is simply whether under all the circumstances a delay of forty-eight minutes is a "substantial violation" of Rule 13.2(c). The majority rely on *Hall* v. *State*, 302 Ark. 341, 789 S.W.2d 456 (1990) and *State* v. *Broadway*, 269 Ark. 215, 599 S.W.2d 721 (1980). But the search in *Hall* was executed between 1:00 a.m. and 3:00 a.m., and *Broadway* was the product of a sharply divided court and the majority opinion does not tell us what time the warrant was executed, only that it was a nighttime search without the required grounds. But 8:48 on a July evening is hardly the equivalent of 1:00 a.m. It is still light, and there is no evidence these appellees had retired for the evening. In short, this case more nearly resembles *Brothers* v. *State*, 261 Ark. 64, 546 S.W.2d 715 (1977) and *James* v. *State*, 280 Ark. 359, 658 S.W.2d 382 (1983). In *Brothers* a search pursuant to a warrant began "about 8:00 p.m. and was completed as soon thereafter as possible." This court found that not to be a material violation of Rule 13.2(c):

> In this particular case the failure to strictly comply with Rule 13.2(c) was not willful, no additional invasion of

privacy occurred, and appellant suffered no prejudice. Therefore, suppression was not warranted.

In *James* the search commenced at 7:10 p.m. but was interrupted so that the warrant could be amended, which was not reissued until 9:12 p.m. Similarly, in *United States* v. *Koller*, 559 F. Supp. 539 (E.D. of Ark. 1983), the federal district court, applying Arkansas law in the interpretation of Rule 13.2(c), denied a motion to suppress where the warrant was signed at 7:55 p.m. and arrived at approximately 8:10 p.m. at the defendant's home. Citing the language quoted from *Brothers, supra*, the district judge wrote:

> Any failure to strictly comply with Rule 13.2(c) did not violate the policy of prohibiting unexpected searches in the middle of the night, was only a matter of minutes, and did not cause a surprise intrusion into defendant's privacy. There was no substantial violation of Rule 13.2(c), of federal policy, or the Untied States Constitution.

Appellees have made no attempt to show prejudice [*Pridgeon* v. *State*, 262 Ark. 428, 559 S.W.2d 4 (1977)] or that the relatively short delay in executing this warrant created any added intrusion into their privacy, or that the delay was attributable to anything other than the instructions interposed by the appellee Jesse Martinez. It is exactly this sort of situation to which *United States* v. *Leon*, 468 U.S. 897 (1984) was intended to apply.

HOLT, C.J., joins.